| UNITED STATES DISTRICT COURT<br>FOR THE MIDDLE DISTRICT OF TENNESSEE<br>NASHVILLE DIVISION | |
|---|---|
| Civil Action No. | |
| CHUBB NATIONAL INSURANCE COMPANY and TRAVELERS PERSONAL SECURITY INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>DALE & MAXEY, INC. d/b/a DALE INCORPORATED,<br><br>     Defendants. | **COMPLAINT** |

Plaintiffs, Chubb National Insurance Company and Travelers Personal Security Insurance Company, by and through undersigned counsel, hereby sue defendant Dale & Maxey, Inc. d/b/a Dale Incorporated, and allege as follows:

<u>PARTIES</u>

1.    Plaintiff, Chubb National Insurance Company, is and has been a corporation organized and existing under the laws of the State of Indiana.

2.    Plaintiff, Travelers Personal Security Insurance Company, is and has been a corporation organized and existing under the laws of the State of Connecticut.

3.    Defendant, Dale & Maxey, Inc. d/b/a Dale Incorporated (hereinafter "Dale"), is and has been at all material times an active corporation organized and existing under the laws of the State of Tennessee, with a principal place of business located at 915 6th Avenue South, Nashville, Tennessee 37203, the registered agent for which is Albert J. Dale III, 915 6th Avenue South, Nashville, TN 37203.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 1 of 52 PageID #: 1

## JURISDICTION

4.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship between the parties, and plaintiff's damages are in excess of $75,000.00, as the property damage giving rise to this action exceeds $4,000,000.

## VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), in that the defendant's principal place of business is in Davidson County, Tennessee, the case involves property situated at 17 Oxmoor Court, Brentwood, Tennessee 37027 (Williamson County), which is also where the events or omissions giving rise to this action occurred, and the Nashville division of the Middle District of Tennessee includes Davidson County and Williamson County.

## FACTS

6.      This case involves a fire of October 21, 2011 (hereinafter "the subject fire") to the home of George Thomas (Tom) Vogel and Denise Vogel (hereinafter "the Vogels") at 17 Oxmoor Court, Brentwood, TN 37027 (hereinafter "the subject home"), originating from a fireplace on the outdoor veranda of said home.

7.      On a date prior to October 21, 2011, Plaintiff Chubb National Insurance Company issued a policy of insurance to the Vogels providing property insurance coverage for the subject home.

8.      On a date prior to October 21, 2011, Plaintiff Travelers Personal Security Insurance Company (hereinafter "Travelers") issued a policy of insurance to Denise Vogel providing property insurance coverage for her 2009 Mercedez Benz (hereinafter "the subject vehicle").

9.     The subject home was constructed in 2006.

10.    The Vogels purchased the subject home October 15, 2010.

11.    The subject home has several fireplaces, one of which was on the back veranda (hereinafter "the subject fireplace").

12.    When the Vogels purchased the home, the subject fireplace was a gas-powered fireplace, *i.e.*, it was not used to burn real wood but operated using "gas logs."

13.    In November or December of 2010, the Vogels considered whether to convert the subject fireplace from a gas log fireplace to a wood-burning fireplace.

14.    In considering whether to convert the subject fireplace to a wood-burning fireplace, the Vogels researched companies in the Nashville area with advertised or demonstrated capabilities in the subject area and contacted Dale to come to the house and see if this could be done.

15.    Representatives of Dale came to the subject house in November or December 2010 and inspected the subject gas log installation and the design and construction of the subject fireplace.

16.    The Dale representatives advised that in order to convert the subject fireplace from a gas log system to a wood-burning system, all that would be needed would be to remove the artificial gas log system and replace it with a stainless steel gas burner pipe, also known as a "gas starter" or "gas igniter," but referred to herein as a burner pipe.

17.    The burner pipe that Dale recommended would run along the bottom of the hearth where the gas logs use to be and above that burner pipe would be a grate on which the owner could place the wood for ignition.

18.     Dale advised that starting a fire using a burner pipe would involve no change to starting a fire with a gas log system in that the owner would simply need to use the switch to the side of the fireplace to release and ignite gas.

19.     Once ignited, the burner pipe would have flames emanating from holes in the pipe and those flames would ignite the wood sitting in the grate above it.

20.     Upon recommendation from Dale, the Vogels hired Dale to do what was necessary to make the conversion which the Vogels understood was to remove the gas logs and replace the gas logs with the burner pipe and a grate to hold the wood.

21.     The burner pipe installed by Dale ran horizontally from the right wall of the firebox to the fireplace toward the left, when one is standing on the veranda looking at the fireplace.

22.     In converting the gas-log system to a wood burning system, Dale among its errors failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were properly sealed with fireplace sealant and failed to properly seal off the hole through which the burner pipe passed to enter the firebox.

23.     The Log Lighter Instructions state:

LOG LIGHTER INSTALLATION

Log lighter should be installed on the front of the grate in such a manner to minimize flame impingement, the amount of heat exposure and that logs placed on the grate will not rest directly on the log lighter tube. Also, the floor clearance should be sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.
….
4. The log lighter should be located such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front. Adjust the air shutter to give sharp blue flames with yellow tips.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 4 of 52 PageID #: 4

24.     Dale failed to assure floor clearance sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.

25.     Dale failed to locate the log lighter such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front.

26.     Dale positioned the burner pipe so that the flame holes were angled more downward to the flooring of the hearth, rather than facing more upward toward the grate, so that the flames emanating from the flame holes burned toward the flooring rather than burning upward to the grate.

27.     The flooring of the firebox hearth was made of metal, as this was a fireplace insert rather than a masonry fireplace, a condition which Dale could see or should have seen for itself when it performed the inspection and/or at the time of the installation of the burner pipe.

28.     Dale aimed the ignitor gas flame holes downward instead of upward and thus increased the heat level to the flooring under the firebox and thus increased the hazard of ignition of wood surrounding the fireplace insert.

29.     Dale failed to obtain, and/or review and/or follow the DESA instructions for the DESA brand fireplace insert on safety precautions for the insert if it is to be wood burning instead of gas burning.

30.     Dale failed to assure that there was insulation around the gas line and in the sleeve opening and failed to properly seal any gaps between gas line and refractory knockout hole with refractory cement or commercial furnace cement.

31.     Further, Dale also should have checked the seams around the firebox to see if they were properly sealed and should have then properly sealed those seams to protect against heat igniting the wood framing of the fireplace insert.

32.     Dale also failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new burner pipe assembly.

33.     Additionally, Dale did not secure a permit for the work being performed or have an inspection performed by the proper agency to verify the quality and conformity of their work.

34.     On the night of the fire, Tom Vogel started a log fire in the subject fireplace at around 7:30 or 8:00 p.m.

35.     At around 9:30 p.m., Mr. Vogel was in his bedroom, which has a fireplace opposite from the veranda fireplace, when the flat screen TV above his bedroom fireplace suddenly turned off.

36.     The two fireplaces share a common area between them in which two separate chimney cases run upward to the roof.

37.     The subject fireplace, which is an outdoor fireplace, had been burning wood since 7:30 or 8:00 pm that night.

38.     When the bedroom TV turned off, Mr. Vogel walked toward the wall where the TV was mounted to investigate.

39.     At first, he thought the cable had gone out, but as he got closer he could see that the TV actually shut down.

40.     While close to the wall, he could hear what sounded like a crackling sound behind the bedroom fireplace wall.

41.     Mr. Vogel placed his hand on the wall and found it was warm to the touch.

42.     Mr. Vogel went through the door to the left of the bedroom fireplace to the veranda and checked the outdoor fireplace.

43. He noticed that the fire in the outdoor fireplace was low.

44. Mr. Vogel went back into his bedroom and could still hear crackling and feel warmth, at which point he told his wife to call 911 and they took their children out of the house.

45. The fire spread rapidly through the house and, despite the best efforts of the responding fire department, the house was severely damaged.

46. After the fire, a coordinated inspection of the subject home took place on November 23, 2011, attended by undersigned counsel, John Reis, and the following: (1) Tom Vogel, owner of Dale; (2) Tim Burgess, electrical engineer with Unified Investigations & Sciences, Inc., , retained by Chubb; (3) Jesse Hooten, fire investigator with Unified Investigations & Sciences, retained by Chubb; (4) David Wright, P.E., of Wright Fire & Forensics, retained by Chubb; (5) Jeff Morrill of Morrfire Investigations, representing Dale; (6) Joe Wheeler, attorney for Dale; (7) Tom Carlton, attorney for Dale; (8) Patrick Murphy, fireplace manager with Dale; (9) Jarred McNeal, National General Adjuster, Engel Martin & Associates, Inc., retained by Builders Insurance, insurer for Williamson County Heating (which had installed gas lights above the subject fireplace); (10) Herbert Allen Cole of Williamson County Heating; (11) McKenzie Roberts, P.E., Engineering Consultant, Engineering Consultants & Design, Inc., McMinnville, TN 37110, for Williamson; (13) James A. Waller, P.E., Structural Engineer, VCE, Inc., Nashville, TN 37202, for Williamson County Heating; (14) Charles A. Griffin of VCE, Inc., for Williamson County Heating; (15) Dewey N. Griffin of VCE, Investigative, Nashville, TN 37210 for Williamson County Heating; (16) Frank Thomas of Leitner Williams for Williamson County Heating; (17) Joe Holt of Kustom Home Entertainment (which had installed cabling for the TV in the Vogels' bedroom); and (18) Nancy L. Jones, Fire Marshal, Brentwood Fire & Rescue, Brentwood Fire Department, Brentwood, TN.

47.     At the November 23, 2011 scene inspection, all parties present had an opportunity to interview Tom Vogel and they did so at length.

48.     On December 2, 2011, a second coordinated scene inspection occurred, attended by undersigned counsel John Reis and Tim Burgess, Jesse Hooten, David Wright, Todd Niner of Wright Investigations, Jeff Morrill, Dewey Griffin, McKenzie Roberts, Charles Griffin, David Wright, Todd Niner, Karen Niner, Frank Thomas, and Nancy Jones.

49.     At the December 2, 2011 scene inspection, the subject fireplace was removed and has been stored off site ever since, along with any other evidence from the scene that those in attendance desired be removed and retained.

50.     On April 10, 2012, an off-site inspection took place whereby all evidence removed from the scene was carefully examined and subjected to such testing as the parties desired, attended by Jesse Hooten, David Wright, Karen Niner, Jeff Morrill, Dewey Griffin, McKenzie Roberts, and Frank Thomas.

51.     The results of the above inspections and examinations revealed that the cause of the fire was ignition of wood in the framing of the subject fireplace, which had overheated due to the failures and omissions of Dale when they converted the fireplace from a gas log system to a wood burning system.

52.     The fire destroyed the subject home and the subject vehicle.

53.     As a result of the fire, the Vogels made a property insurance claim with Chubb for the damages to the house and its contents and the loss of use thereof.

54.     As a result of the fire, Denise Vogel made a property insurance claim with Traveler for the damages to the subject vehicle and its loss of use.

55.     Chubb paid the Vogels claim for the damages to the house, contents, and loss of use of the home in the total amount of $4,956,965.36 and the Vogels incurred no deductible.

56.     Travelers paid Denise Vogel $42,331.31 and received back salvage value of $10,828.51, for a total claim of $31,502.49 for the damages to the subject vehicle in that amount; Denise Vogel incurred a $250.00 deductible.

57.     Having paid the Vogels for the above damages pursuant to the policy of insurance, Chubb is subrogated to its insureds' right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

58.     Having paid Denise Vogel for the above damages pursuant to the policy of insurance, Travelers is subrogated to its insured's right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

## COUNT I
## BREACH OF CONTRACT

59.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

60.     Dale and the Vogels exchanged offers until they entered into a valid and enforceable oral and/or implied-in-fact contract pursuant to which Dale would use it professional knowledge and skills to convert the subject fireplace from a gas log system to a wood burning system.

61.     Having contracted to perform the work described above, Defendant had an implicit duty to perform in accordance with applicable codes, procedures, and industry standards,

in a workmanlike manner, and/or in compliance with the terms of the contract and was fully responsible for defective materials and/or workmanship it provided.

62. Defendant breached that standard of care in the following ways:

a. it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were sealed with fireplace sealant.

b. it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c. it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d. it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

63. The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT II
## NEGLIGENCE

64. Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

65. Dale after being given an opportunity to inspect undertook for an agreed fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

66. Having undertaken to perform the work described above, Defendant had an implicit duty to perform said work in accordance with applicable codes, procedures, and industry

standards and in a workmanlike manner and was responsible for defective materials and/or workmanship it provided.

67. Defendant breached that standard of care in the following ways:

a. it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area --  were sealed with fireplace sealant.

b. it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c. it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d. it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

68. The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE

69. Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

70. Dale represented itself as knowledgeable, experienced and capable of undertaking to inspect and evaluate the fireplace conversion project and thereafter undertook for a fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

71. Having undertaken to perform the work described above, Dale impliedly warranted that it would perform in a workmanlike manner and exercise reasonable care in converting the fireplace system, such that the system would be free from defects and would be fit for its intended purposes and in accordance with local building codes, building plans and industry standards.

72. The defendant breached this warranty by failing to convert the fireplace system in a workmanlike manner, free from defects, and in accordance with industry standards, local building codes and the building plans, in the following ways:

a. it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were insulated and/or sealed with fireplace sealant.

b. it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate, as specified by the instructions of the manufacturer.

c. it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d. it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

e. it knew or should have known when it reported the project complete that the fireplace did not conform to standards, did not comply with codes, and was defective and unsafe to use.

73. The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

Respectfully submitted this the 30th day of May 2013.

By:   /s/ John W. Reis
       John W. Reis, Esq., BPR # 024818
       COZEN O'CONNOR
       One Wells Fargo Center, Suite 2100
       301 South College Street
       Charlotte, NC 28202
       Phone:  (704) 376-3400
       Fax:  (704) 334-3351
       E-mail:  jreis@cozen.com
       *Counsel for Plaintiffs*

By:   /s/ James A. Freeman
       James A. Freeman, III, Esq., BPR # 003223
       JAMES A. FREEMAN & ASSOCIATES
       2804 Columbine Place
       Nashville, TN 37204
       Phone: 615-383-3787
       Fax: 615-463-8083
       Email: jfreeman@jafreemanlaw.com
       *Co-counsel for Plaintiffs*

| UNITED STATES DISTRICT COURT<br>FOR THE MIDDLE DISTRICT OF TENNESSEE<br>NASHVILLE DIVISION | |
|---|---|
| Civil Action No. | |
| CHUBB NATIONAL INSURANCE COMPANY and TRAVELERS PERSONAL SECURITY INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>DALE & MAXEY, INC. d/b/a DALE INCORPORATED,<br><br>    Defendants. | **COMPLAINT** |

Plaintiffs, Chubb National Insurance Company and Travelers Personal Security Insurance Company, by and through undersigned counsel, hereby sue defendant Dale & Maxey, Inc. d/b/a Dale Incorporated, and allege as follows:

<u>PARTIES</u>

1.      Plaintiff, Chubb National Insurance Company, is and has been a corporation organized and existing under the laws of the State of Indiana.

2.      Plaintiff, Travelers Personal Security Insurance Company, is and has been a corporation organized and existing under the laws of the State of Connecticut.

3.      Defendant, Dale & Maxey, Inc. d/b/a Dale Incorporated (hereinafter "Dale"), is and has been at all material times an active corporation organized and existing under the laws of the State of Tennessee, with a principal place of business located at 915 6th Avenue South, Nashville, Tennessee 37203, the registered agent for which is Albert J. Dale III, 915 6th Avenue South, Nashville, TN 37203.

## JURISDICTION

4.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship between the parties, and plaintiff's damages are in excess of $75,000.00, as the property damage giving rise to this action exceeds $4,000,000.

## VENUE

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), in that the defendant's principal place of business is in Davidson County, Tennessee, the case involves property situated at 17 Oxmoor Court, Brentwood, Tennessee 37027 (Williamson County), which is also where the events or omissions giving rise to this action occurred, and the Nashville division of the Middle District of Tennessee includes Davidson County and Williamson County.

## FACTS

6.     This case involves a fire of October 21, 2011 (hereinafter "the subject fire") to the home of George Thomas (Tom) Vogel and Denise Vogel (hereinafter "the Vogels") at 17 Oxmoor Court, Brentwood, TN 37027 (hereinafter "the subject home"), originating from a fireplace on the outdoor veranda of said home.

7.     On a date prior to October 21, 2011, Plaintiff Chubb National Insurance Company issued a policy of insurance to the Vogels providing property insurance coverage for the subject home.

8.     On a date prior to October 21, 2011, Plaintiff Travelers Personal Security Insurance Company (hereinafter "Travelers") issued a policy of insurance to Denise Vogel providing property insurance coverage for her 2009 Mercedez Benz (hereinafter "the subject vehicle").

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 15 of 52 PageID #: 15

9.      The subject home was constructed in 2006.

10.     The Vogels purchased the subject home October 15, 2010.

11.     The subject home has several fireplaces, one of which was on the back veranda (hereinafter "the subject fireplace").

12.     When the Vogels purchased the home, the subject fireplace was a gas-powered fireplace, *i.e.*, it was not used to burn real wood but operated using "gas logs."

13.     In November or December of 2010, the Vogels considered whether to convert the subject fireplace from a gas log fireplace to a wood-burning fireplace.

14.     In considering whether to convert the subject fireplace to a wood-burning fireplace, the Vogels researched companies in the Nashville area with advertised or demonstrated capabilities in the subject area and contacted Dale to come to the house and see if this could be done.

15.     Representatives of Dale came to the subject house in November or December 2010 and inspected the subject gas log installation and the design and construction of the subject fireplace.

16.     The Dale representatives advised that in order to convert the subject fireplace from a gas log system to a wood-burning system, all that would be needed would be to remove the artificial gas log system and replace it with a stainless steel gas burner pipe, also known as a "gas starter" or "gas igniter," but referred to herein as a burner pipe.

17.     The burner pipe that Dale recommended would run along the bottom of the hearth where the gas logs use to be and above that burner pipe would be a grate on which the owner could place the wood for ignition.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 16 of 52 PageID #: 16

18.    Dale advised that starting a fire using a burner pipe would involve no change to starting a fire with a gas log system in that the owner would simply need to use the switch to the side of the fireplace to release and ignite gas.

19.    Once ignited, the burner pipe would have flames emanating from holes in the pipe and those flames would ignite the wood sitting in the grate above it.

20.    Upon recommendation from Dale, the Vogels hired Dale to do what was necessary to make the conversion which the Vogels understood was to remove the gas logs and replace the gas logs with the burner pipe and a grate to hold the wood.

21.    The burner pipe installed by Dale ran horizontally from the right wall of the firebox to the fireplace toward the left, when one is standing on the veranda looking at the fireplace.

22.    In converting the gas-log system to a wood burning system, Dale among its errors failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area --  were properly sealed with fireplace sealant and failed to properly seal off the hole through which the burner pipe passed to enter the firebox.

23.    The Log Lighter Instructions state:

LOG LIGHTER INSTALLATION

Log lighter should be installed on the front of the grate in such a manner to minimize flame impingement, the amount of heat exposure and that logs placed on the grate will not rest directly on the log lighter tube. Also, the floor clearance should be sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.
….
4. The log lighter should be located such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front. Adjust the air shutter to give sharp blue flames with yellow tips.

24.     Dale failed to assure floor clearance sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.

25.     Dale failed to locate the log lighter such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front.

26.     Dale positioned the burner pipe so that the flame holes were angled more downward to the flooring of the hearth, rather than facing more upward toward the grate, so that the flames emanating from the flame holes burned toward the flooring rather than burning upward to the grate.

27.     The flooring of the firebox hearth was made of metal, as this was a fireplace insert rather than a masonry fireplace, a condition which Dale could see or should have seen for itself when it performed the inspection and/or at the time of the installation of the burner pipe.

28.     Dale aimed the ignitor gas flame holes downward instead of upward and thus increased the heat level to the flooring under the firebox and thus increased the hazard of ignition of wood surrounding the fireplace insert.

29.     Dale failed to obtain, and/or review and/or follow the DESA instructions for the DESA brand fireplace insert on safety precautions for the insert if it is to be wood burning instead of gas burning.

30.     Dale failed to assure that there was insulation around the gas line and in the sleeve opening and failed to properly seal any gaps between gas line and refractory knockout hole with refractory cement or commercial furnace cement.

31.     Further, Dale also should have checked the seams around the firebox to see if they were properly sealed and should have then properly sealed those seams to protect against heat igniting the wood framing of the fireplace insert.

32.     Dale also failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new burner pipe assembly.

33.     Additionally, Dale did not secure a permit for the work being performed or have an inspection performed by the proper agency to verify the quality and conformity of their work.

34.     On the night of the fire, Tom Vogel started a log fire in the subject fireplace at around 7:30 or 8:00 p.m.

35.     At around 9:30 p.m., Mr. Vogel was in his bedroom, which has a fireplace opposite from the veranda fireplace, when the flat screen TV above his bedroom fireplace suddenly turned off.

36.     The two fireplaces share a common area between them in which two separate chimney cases run upward to the roof.

37.     The subject fireplace, which is an outdoor fireplace, had been burning wood since 7:30 or 8:00 pm that night.

38.     When the bedroom TV turned off, Mr. Vogel walked toward the wall where the TV was mounted to investigate.

39.     At first, he thought the cable had gone out, but as he got closer he could see that the TV actually shut down.

40.     While close to the wall, he could hear what sounded like a crackling sound behind the bedroom fireplace wall.

41.     Mr. Vogel placed his hand on the wall and found it was warm to the touch.

42.     Mr. Vogel went through the door to the left of the bedroom fireplace to the veranda and checked the outdoor fireplace.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 19 of 52 PageID #: 19

43.     He noticed that the fire in the outdoor fireplace was low.

44.     Mr. Vogel went back into his bedroom and could still hear crackling and feel warmth, at which point he told his wife to call 911 and they took their children out of the house.

45.     The fire spread rapidly through the house and, despite the best efforts of the responding fire department, the house was severely damaged.

46.     After the fire, a coordinated inspection of the subject home took place on November 23, 2011, attended by undersigned counsel, John Reis, and the following: (1) Tom Vogel, owner of Dale; (2) Tim Burgess, electrical engineer with Unified Investigations & Sciences, Inc., , retained by   Chubb; (3) Jesse Hooten, fire investigator with Unified Investigations & Sciences, retained by   Chubb; (4) David Wright, P.E., of Wright Fire & Forensics, retained by Chubb; (5) Jeff Morrill of Morrfire Investigations, representing Dale; (6) Joe Wheeler, attorney for Dale; (7) Tom Carlton, attorney for Dale; (8) Patrick Murphy, fireplace manager with Dale; (9) Jarred McNeal, National General Adjuster, Engel Martin & Associates, Inc., retained by Builders Insurance, insurer for Williamson County Heating (which had installed gas lights above the subject fireplace); (10) Herbert Allen Cole of Williamson County Heating; (11) McKenzie Roberts, P.E., Engineering Consultant, Engineering Consultants & Design, Inc., McMinnville, TN 37110, for Williamson; (13) James A. Waller, P.E., Structural Engineer, VCE, Inc., Nashville, TN 37202, for Williamson County Heating; (14) Charles A. Griffin of VCE, Inc., for Williamson County Heating; (15) Dewey N. Griffin of VCE, Investigative, Nashville, TN 37210 for Williamson County Heating; (16) Frank Thomas of Leitner Williams for Williamson County Heating; (17) Joe Holt of Kustom Home Entertainment (which had installed cabling for the TV in the Vogels' bedroom); and (18) Nancy L. Jones, Fire Marshal, Brentwood Fire & Rescue, Brentwood Fire Department, Brentwood, TN.

47.     At the November 23, 2011 scene inspection, all parties present had an opportunity to interview Tom Vogel and they did so at length.

48.     On December 2, 2011, a second coordinated scene inspection occurred, attended by undersigned counsel John Reis and Tim Burgess, Jesse Hooten, David Wright, Todd Niner of Wright Investigations, Jeff Morrill, Dewey Griffin, McKenzie Roberts, Charles Griffin, David Wright, Todd Niner, Karen Niner, Frank Thomas, and Nancy Jones.

49.     At the December 2, 2011 scene inspection, the subject fireplace was removed and has been stored off site ever since, along with any other evidence from the scene that those in attendance desired be removed and retained.

50.     On April 10, 2012, an off-site inspection took place whereby all evidence removed from the scene was carefully examined and subjected to such testing as the parties desired, attended by Jesse Hooten, David Wright, Karen Niner, Jeff Morrill, Dewey Griffin, McKenzie Roberts, and Frank Thomas.

51.     The results of the above inspections and examinations revealed that the cause of the fire was ignition of wood in the framing of the subject fireplace, which had overheated due to the failures and omissions of Dale when they converted the fireplace from a gas log system to a wood burning system.

52.     The fire destroyed the subject home and the subject vehicle.

53.     As a result of the fire, the Vogels made a property insurance claim with Chubb for the damages to the house and its contents and the loss of use thereof.

54.     As a result of the fire, Denise Vogel made a property insurance claim with Traveler for the damages to the subject vehicle and its loss of use.

55. Chubb paid the Vogels claim for the damages to the house, contents, and loss of use of the home in the total amount of $4,956,965.36 and the Vogels incurred no deductible.

56. Travelers paid Denise Vogel $42,331.31 and received back salvage value of $10,828.51, for a total claim of $31,502.49 for the damages to the subject vehicle in that amount; Denise Vogel incurred a $250.00 deductible.

57. Having paid the Vogels for the above damages pursuant to the policy of insurance, Chubb is subrogated to its insureds' right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

58. Having paid Denise Vogel for the above damages pursuant to the policy of insurance, Travelers is subrogated to its insured's right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

## COUNT I
## BREACH OF CONTRACT

59. Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

60. Dale and the Vogels exchanged offers until they entered into a valid and enforceable oral and/or implied-in-fact contract pursuant to which Dale would use it professional knowledge and skills to convert the subject fireplace from a gas log system to a wood burning system.

61. Having contracted to perform the work described above, Defendant had an implicit duty to perform in accordance with applicable codes, procedures, and industry standards,

in a workmanlike manner, and/or in compliance with the terms of the contract and was fully

responsible for defective materials and/or workmanship it provided.

62.     Defendant breached that standard of care in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of
        the firebox meets the wood framing and where the burner pipe enters the firebox
        from the framed-in area --  were sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the
        flooring of the hearth, rather than facing upward toward the grate, so that the
        flames emanating from the flame holes burned directly against the flooring rather
        than burning upward to the grate.

c.      it failed to provide the Vogels with any instructions or warnings for future use of
        the fireplace, including the failure to caution or warn the Vogels regarding the
        size of the grate they should use in the firebox with the new gas burner pipe
        assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected
        and approved by local officials.

63.     The subject fire and resulting damages were a direct and proximate result of the

above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this

Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be

properly awarded by the Court.

## COUNT II
## NEGLIGENCE

64.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding

Count I as if fully stated herein.

65.     Dale after being given an opportunity to inspect undertook for an agreed fee to

convert the subject fireplace from a gas log system to a wood burning system for the use and

benefit of the Vogels.

66.     Having undertaken to perform the work described above, Defendant had an

implicit duty to perform said work in accordance with applicable codes, procedures, and industry

standards and in a workmanlike manner and was responsible for defective materials and/or workmanship it provided.

67.     Defendant breached that standard of care in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c.      it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

68.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE

69.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

70.     Dale represented itself as knowledgeable, experienced and capable of undertaking to inspect and evaluate the fireplace conversion project and thereafter undertook for a fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

71.     Having undertaken to perform the work described above, Dale impliedly warranted that it would perform in a workmanlike manner and exercise reasonable care in converting the fireplace system, such that the system would be free from defects and would be fit for its intended purposes and in accordance with local building codes, building plans and industry standards.

72.     The defendant breached this warranty by failing to convert the fireplace system in a workmanlike manner, free from defects, and in accordance with industry standards, local building codes and the building plans, in the following ways:

a.     it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were insulated and/or sealed with fireplace sealant.

b.     it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate, as specified by the instructions of the manufacturer.

c.     it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.     it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

e.     it knew or should have known when it reported the project complete that the fireplace did not conform to standards, did not comply with codes, and was defective and unsafe to use.

73.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

Respectfully submitted this the 30th day of May 2013.

By:     /s/ John W. Reis
        John W. Reis, Esq., BPR # 024818
        COZEN O'CONNOR
        One Wells Fargo Center, Suite 2100
        301 South College Street
        Charlotte, NC 28202
        Phone:  (704) 376-3400
        Fax:  (704) 334-3351
        E-mail:  jreis@cozen.com
        *Counsel for Plaintiffs*

By:     /s/ James A. Freeman
        James A. Freeman, III, Esq., BPR # 003223
        JAMES A. FREEMAN & ASSOCIATES
        2804 Columbine Place
        Nashville, TN 37204
        Phone: 615-383-3787
        Fax: 615-463-8083
        Email: jfreeman@jafreemanlaw.com
        *Co-counsel for Plaintiffs*

| UNITED STATES DISTRICT COURT<br>FOR THE MIDDLE DISTRICT OF TENNESSEE<br>NASHVILLE DIVISION | |
|---|---|
| Civil Action No. | |
| CHUBB NATIONAL INSURANCE<br>COMPANY and TRAVELERS PERSONAL<br>SECURITY INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>DALE & MAXEY, INC. d/b/a DALE<br>INCORPORATED,<br><br>     Defendants. | **COMPLAINT** |

Plaintiffs, Chubb National Insurance Company and Travelers Personal Security Insurance Company, by and through undersigned counsel, hereby sue defendant Dale & Maxey, Inc. d/b/a Dale Incorporated, and allege as follows:

<u>PARTIES</u>

1.     Plaintiff, Chubb National Insurance Company, is and has been a corporation organized and existing under the laws of the State of Indiana.

2.     Plaintiff, Travelers Personal Security Insurance Company, is and has been a corporation organized and existing under the laws of the State of Connecticut.

3.     Defendant, Dale & Maxey, Inc. d/b/a Dale Incorporated (hereinafter "Dale"), is and has been at all material times an active corporation organized and existing under the laws of the State of Tennessee, with a principal place of business located at 915 6th Avenue South, Nashville, Tennessee 37203, the registered agent for which is Albert J. Dale III, 915 6th Avenue South, Nashville, TN 37203.

## JURISDICTION

4.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship between the parties, and plaintiff's damages are in excess of $75,000.00, as the property damage giving rise to this action exceeds $4,000,000.

## VENUE

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), in that the defendant's principal place of business is in Davidson County, Tennessee, the case involves property situated at 17 Oxmoor Court, Brentwood, Tennessee 37027 (Williamson County), which is also where the events or omissions giving rise to this action occurred, and the Nashville division of the Middle District of Tennessee includes Davidson County and Williamson County.

## FACTS

6.     This case involves a fire of October 21, 2011 (hereinafter "the subject fire") to the home of George Thomas (Tom) Vogel and Denise Vogel (hereinafter "the Vogels") at 17 Oxmoor Court, Brentwood, TN 37027 (hereinafter "the subject home"), originating from a fireplace on the outdoor veranda of said home.

7.     On a date prior to October 21, 2011, Plaintiff Chubb National Insurance Company issued a policy of insurance to the Vogels providing property insurance coverage for the subject home.

8.     On a date prior to October 21, 2011, Plaintiff Travelers Personal Security Insurance Company (hereinafter "Travelers") issued a policy of insurance to Denise Vogel providing property insurance coverage for her 2009 Mercedez Benz (hereinafter "the subject vehicle").

9.      The subject home was constructed in 2006.

10.     The Vogels purchased the subject home October 15, 2010.

11.     The subject home has several fireplaces, one of which was on the back veranda (hereinafter "the subject fireplace").

12.     When the Vogels purchased the home, the subject fireplace was a gas-powered fireplace, *i.e.*, it was not used to burn real wood but operated using "gas logs."

13.     In November or December of 2010, the Vogels considered whether to convert the subject fireplace from a gas log fireplace to a wood-burning fireplace.

14.     In considering whether to convert the subject fireplace to a wood-burning fireplace, the Vogels researched companies in the Nashville area with advertised or demonstrated capabilities in the subject area and contacted Dale to come to the house and see if this could be done.

15.     Representatives of Dale came to the subject house in November or December 2010 and inspected the subject gas log installation and the design and construction of the subject fireplace.

16.     The Dale representatives advised that in order to convert the subject fireplace from a gas log system to a wood-burning system, all that would be needed would be to remove the artificial gas log system and replace it with a stainless steel gas burner pipe, also known as a "gas starter" or "gas igniter," but referred to herein as a burner pipe.

17.     The burner pipe that Dale recommended would run along the bottom of the hearth where the gas logs use to be and above that burner pipe would be a grate on which the owner could place the wood for ignition.

Page 3 of 13

18.     Dale advised that starting a fire using a burner pipe would involve no change to starting a fire with a gas log system in that the owner would simply need to use the switch to the side of the fireplace to release and ignite gas.

19.     Once ignited, the burner pipe would have flames emanating from holes in the pipe and those flames would ignite the wood sitting in the grate above it.

20.     Upon recommendation from Dale, the Vogels hired Dale to do what was necessary to make the conversion which the Vogels understood was to remove the gas logs and replace the gas logs with the burner pipe and a grate to hold the wood.

21.     The burner pipe installed by Dale ran horizontally from the right wall of the firebox to the fireplace toward the left, when one is standing on the veranda looking at the fireplace.

22.     In converting the gas-log system to a wood burning system, Dale among its errors failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were properly sealed with fireplace sealant and failed to properly seal off the hole through which the burner pipe passed to enter the firebox.

23.     The Log Lighter Instructions state:

LOG LIGHTER INSTALLATION

Log lighter should be installed on the front of the grate in such a manner to minimize flame impingement, the amount of heat exposure and that logs placed on the grate will not rest directly on the log lighter tube. Also, the floor clearance should be sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.
….
4. The log lighter should be located such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front. Adjust the air shutter to give sharp blue flames with yellow tips.

24.     Dale failed to assure floor clearance sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.

25.     Dale failed to locate the log lighter such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front.

26.     Dale positioned the burner pipe so that the flame holes were angled more downward to the flooring of the hearth, rather than facing more upward toward the grate, so that the flames emanating from the flame holes burned toward the flooring rather than burning upward to the grate.

27.     The flooring of the firebox hearth was made of metal, as this was a fireplace insert rather than a masonry fireplace, a condition which Dale could see or should have seen for itself when it performed the inspection and/or at the time of the installation of the burner pipe.

28.     Dale aimed the ignitor gas flame holes downward instead of upward and thus increased the heat level to the flooring under the firebox and thus increased the hazard of ignition of wood surrounding the fireplace insert.

29.     Dale failed to obtain, and/or review and/or follow the DESA instructions for the DESA brand fireplace insert on safety precautions for the insert if it is to be wood burning instead of gas burning.

30.     Dale failed to assure that there was insulation around the gas line and in the sleeve opening and failed to properly seal any gaps between gas line and refractory knockout hole with refractory cement or commercial furnace cement.

31.     Further, Dale also should have checked the seams around the firebox to see if they were properly sealed and should have then properly sealed those seams to protect against heat igniting the wood framing of the fireplace insert.

32. Dale also failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new burner pipe assembly.

33. Additionally, Dale did not secure a permit for the work being performed or have an inspection performed by the proper agency to verify the quality and conformity of their work.

34. On the night of the fire, Tom Vogel started a log fire in the subject fireplace at around 7:30 or 8:00 p.m.

35. At around 9:30 p.m., Mr. Vogel was in his bedroom, which has a fireplace opposite from the veranda fireplace, when the flat screen TV above his bedroom fireplace suddenly turned off.

36. The two fireplaces share a common area between them in which two separate chimney cases run upward to the roof.

37. The subject fireplace, which is an outdoor fireplace, had been burning wood since 7:30 or 8:00 pm that night.

38. When the bedroom TV turned off, Mr. Vogel walked toward the wall where the TV was mounted to investigate.

39. At first, he thought the cable had gone out, but as he got closer he could see that the TV actually shut down.

40. While close to the wall, he could hear what sounded like a crackling sound behind the bedroom fireplace wall.

41. Mr. Vogel placed his hand on the wall and found it was warm to the touch.

42. Mr. Vogel went through the door to the left of the bedroom fireplace to the veranda and checked the outdoor fireplace.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 32 of 52 PageID #: 32

43.     He noticed that the fire in the outdoor fireplace was low.

44.     Mr. Vogel went back into his bedroom and could still hear crackling and feel warmth, at which point he told his wife to call 911 and they took their children out of the house.

45.     The fire spread rapidly through the house and, despite the best efforts of the responding fire department, the house was severely damaged.

46.     After the fire, a coordinated inspection of the subject home took place on November 23, 2011, attended by undersigned counsel, John Reis, and the following: (1) Tom Vogel, owner of Dale; (2) Tim Burgess, electrical engineer with Unified Investigations & Sciences, Inc., , retained by  Chubb; (3) Jesse Hooten, fire investigator with Unified Investigations & Sciences, retained by  Chubb; (4) David Wright, P.E., of Wright Fire & Forensics, retained by Chubb; (5) Jeff Morrill of Morrfire Investigations, representing Dale; (6) Joe Wheeler, attorney for Dale; (7) Tom Carlton, attorney for Dale; (8) Patrick Murphy, fireplace manager with Dale; (9) Jarred McNeal, National General Adjuster, Engel Martin & Associates, Inc., retained by Builders Insurance, insurer for Williamson County Heating (which had installed gas lights above the subject fireplace); (10) Herbert Allen Cole of Williamson County Heating; (11) McKenzie Roberts, P.E., Engineering Consultant, Engineering Consultants & Design, Inc., McMinnville, TN 37110, for Williamson; (13) James A. Waller, P.E., Structural Engineer, VCE, Inc., Nashville, TN 37202, for Williamson County Heating; (14) Charles A. Griffin of VCE, Inc., for Williamson County Heating; (15) Dewey N. Griffin of VCE, Investigative, Nashville, TN 37210 for Williamson County Heating; (16) Frank Thomas of Leitner Williams for Williamson County Heating; (17) Joe Holt of Kustom Home Entertainment (which had installed cabling for the TV in the Vogels' bedroom); and (18) Nancy L. Jones, Fire Marshal, Brentwood Fire & Rescue, Brentwood Fire Department, Brentwood, TN.

47.     At the November 23, 2011 scene inspection, all parties present had an opportunity to interview Tom Vogel and they did so at length.

48.     On December 2, 2011, a second coordinated scene inspection occurred, attended by undersigned counsel John Reis and Tim Burgess, Jesse Hooten, David Wright, Todd Niner of Wright Investigations, Jeff Morrill, Dewey Griffin, McKenzie Roberts, Charles Griffin, David Wright, Todd Niner, Karen Niner, Frank Thomas, and Nancy Jones.

49.     At the December 2, 2011 scene inspection, the subject fireplace was removed and has been stored off site ever since, along with any other evidence from the scene that those in attendance desired be removed and retained.

50.     On April 10, 2012, an off-site inspection took place whereby all evidence removed from the scene was carefully examined and subjected to such testing as the parties desired, attended by Jesse Hooten, David Wright, Karen Niner, Jeff Morrill, Dewey Griffin, McKenzie Roberts, and Frank Thomas.

51.     The results of the above inspections and examinations revealed that the cause of the fire was ignition of wood in the framing of the subject fireplace, which had overheated due to the failures and omissions of Dale when they converted the fireplace from a gas log system to a wood burning system.

52.     The fire destroyed the subject home and the subject vehicle.

53.     As a result of the fire, the Vogels made a property insurance claim with Chubb for the damages to the house and its contents and the loss of use thereof.

54.     As a result of the fire, Denise Vogel made a property insurance claim with Traveler for the damages to the subject vehicle and its loss of use.

55.     Chubb paid the Vogels claim for the damages to the house, contents, and loss of use of the home in the total amount of $4,956,965.36 and the Vogels incurred no deductible.

56.     Travelers paid Denise Vogel $42,331.31 and received back salvage value of $10,828.51, for a total claim of $31,502.49 for the damages to the subject vehicle in that amount; Denise Vogel incurred a $250.00 deductible.

57.     Having paid the Vogels for the above damages pursuant to the policy of insurance, Chubb is subrogated to its insureds' right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

58.     Having paid Denise Vogel for the above damages pursuant to the policy of insurance, Travelers is subrogated to its insured's right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

## COUNT I
## BREACH OF CONTRACT

59.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

60.     Dale and the Vogels exchanged offers until they entered into a valid and enforceable oral and/or implied-in-fact contract pursuant to which Dale would use it professional knowledge and skills to convert the subject fireplace from a gas log system to a wood burning system.

61.     Having contracted to perform the work described above, Defendant had an implicit duty to perform in accordance with applicable codes, procedures, and industry standards,

in a workmanlike manner, and/or in compliance with the terms of the contract and was fully responsible for defective materials and/or workmanship it provided.

62. Defendant breached that standard of care in the following ways:

a. it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were sealed with fireplace sealant.

b. it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c. it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d. it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

63. The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT II
## NEGLIGENCE

64. Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

65. Dale after being given an opportunity to inspect undertook for an agreed fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

66. Having undertaken to perform the work described above, Defendant had an implicit duty to perform said work in accordance with applicable codes, procedures, and industry

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 36 of 52 PageID #: 36

standards and in a workmanlike manner and was responsible for defective materials and/or workmanship it provided.

67.     Defendant breached that standard of care in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area --  were sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c.      it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

68.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## <u>COUNT III</u>
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE

69.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

70.     Dale represented itself as knowledgeable, experienced and capable of undertaking to inspect and evaluate the fireplace conversion project and thereafter undertook for a fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

71.     Having undertaken to perform the work described above, Dale impliedly warranted that it would perform in a workmanlike manner and exercise reasonable care in converting the fireplace system, such that the system would be free from defects and would be fit for its intended purposes and in accordance with local building codes, building plans and industry standards.

72.     The defendant breached this warranty by failing to convert the fireplace system in a workmanlike manner, free from defects, and in accordance with industry standards, local building codes and the building plans, in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were insulated and/or sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate, as specified by the instructions of the manufacturer.

c.      it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

e.      it knew or should have known when it reported the project complete that the fireplace did not conform to standards, did not comply with codes, and was defective and unsafe to use.

73.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

Respectfully submitted this the 30th day of May 2013.

By:    /s/ John W. Reis
         John W. Reis, Esq., BPR # 024818
         COZEN O'CONNOR
         One Wells Fargo Center, Suite 2100
         301 South College Street
         Charlotte, NC 28202
         Phone:  (704) 376-3400
         Fax:  (704) 334-3351
         E-mail:  jreis@cozen.com
         *Counsel for Plaintiffs*

By:    /s/ James A. Freeman
         James A. Freeman, III, Esq., BPR # 003223
         JAMES A. FREEMAN & ASSOCIATES
         2804 Columbine Place
         Nashville, TN 37204
         Phone: 615-383-3787
         Fax: 615-463-8083
         Email: jfreeman@jafreemanlaw.com
         *Co-counsel for Plaintiffs*

| UNITED STATES DISTRICT COURT<br>FOR THE MIDDLE DISTRICT OF TENNESSEE<br>NASHVILLE DIVISION | |
|---|---|
| Civil Action No. | |
| CHUBB NATIONAL INSURANCE<br>COMPANY and TRAVELERS PERSONAL<br>SECURITY INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>DALE & MAXEY, INC. d/b/a DALE<br>INCORPORATED,<br><br>     Defendants. | **COMPLAINT** |

Plaintiffs, Chubb National Insurance Company and Travelers Personal Security Insurance Company, by and through undersigned counsel, hereby sue defendant Dale & Maxey, Inc. d/b/a Dale Incorporated, and allege as follows:

**PARTIES**

1.     Plaintiff, Chubb National Insurance Company, is and has been a corporation organized and existing under the laws of the State of Indiana.

2.     Plaintiff, Travelers Personal Security Insurance Company, is and has been a corporation organized and existing under the laws of the State of Connecticut.

3.     Defendant, Dale & Maxey, Inc. d/b/a Dale Incorporated (hereinafter "Dale"), is and has been at all material times an active corporation organized and existing under the laws of the State of Tennessee, with a principal place of business located at 915 6th Avenue South, Nashville, Tennessee 37203, the registered agent for which is Albert J. Dale III, 915 6th Avenue South, Nashville, TN 37203.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 40 of 52 PageID #: 40

## JURISDICTION

4.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship between the parties, and plaintiff's damages are in excess of $75,000.00, as the property damage giving rise to this action exceeds $4,000,000.

## VENUE

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), in that the defendant's principal place of business is in Davidson County, Tennessee, the case involves property situated at 17 Oxmoor Court, Brentwood, Tennessee 37027 (Williamson County), which is also where the events or omissions giving rise to this action occurred, and the Nashville division of the Middle District of Tennessee includes Davidson County and Williamson County.

## FACTS

6.     This case involves a fire of October 21, 2011 (hereinafter "the subject fire") to the home of George Thomas (Tom) Vogel and Denise Vogel (hereinafter "the Vogels") at 17 Oxmoor Court, Brentwood, TN 37027 (hereinafter "the subject home"), originating from a fireplace on the outdoor veranda of said home.

7.     On a date prior to October 21, 2011, Plaintiff Chubb National Insurance Company issued a policy of insurance to the Vogels providing property insurance coverage for the subject home.

8.     On a date prior to October 21, 2011, Plaintiff Travelers Personal Security Insurance Company (hereinafter "Travelers") issued a policy of insurance to Denise Vogel providing property insurance coverage for her 2009 Mercedez Benz (hereinafter "the subject vehicle").

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 41 of 52 PageID #: 41

9.      The subject home was constructed in 2006.

10.     The Vogels purchased the subject home October 15, 2010.

11.     The subject home has several fireplaces, one of which was on the back veranda (hereinafter "the subject fireplace").

12.     When the Vogels purchased the home, the subject fireplace was a gas-powered fireplace, *i.e.*, it was not used to burn real wood but operated using "gas logs."

13.     In November or December of 2010, the Vogels considered whether to convert the subject fireplace from a gas log fireplace to a wood-burning fireplace.

14.     In considering whether to convert the subject fireplace to a wood-burning fireplace, the Vogels researched companies in the Nashville area with advertised or demonstrated capabilities in the subject area and contacted Dale to come to the house and see if this could be done.

15.     Representatives of Dale came to the subject house in November or December 2010 and inspected the subject gas log installation and the design and construction of the subject fireplace.

16.     The Dale representatives advised that in order to convert the subject fireplace from a gas log system to a wood-burning system, all that would be needed would be to remove the artificial gas log system and replace it with a stainless steel gas burner pipe, also known as a "gas starter" or "gas igniter," but referred to herein as a burner pipe.

17.     The burner pipe that Dale recommended would run along the bottom of the hearth where the gas logs use to be and above that burner pipe would be a grate on which the owner could place the wood for ignition.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 42 of 52 PageID #: 42

18.     Dale advised that starting a fire using a burner pipe would involve no change to starting a fire with a gas log system in that the owner would simply need to use the switch to the side of the fireplace to release and ignite gas.

19.     Once ignited, the burner pipe would have flames emanating from holes in the pipe and those flames would ignite the wood sitting in the grate above it.

20.     Upon recommendation from Dale, the Vogels hired Dale to do what was necessary to make the conversion which the Vogels understood was to remove the gas logs and replace the gas logs with the burner pipe and a grate to hold the wood.

21.     The burner pipe installed by Dale ran horizontally from the right wall of the firebox to the fireplace toward the left, when one is standing on the veranda looking at the fireplace.

22.     In converting the gas-log system to a wood burning system, Dale among its errors failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area --  were properly sealed with fireplace sealant and failed to properly seal off the hole through which the burner pipe passed to enter the firebox.

23.     The Log Lighter Instructions state:

## LOG LIGHTER INSTALLATION

Log lighter should be installed on the front of the grate in such a manner to minimize flame impingement, the amount of heat exposure and that logs placed on the grate will not rest directly on the log lighter tube. Also, the floor clearance should be sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.
….
4. The log lighter should be located such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front. Adjust the air shutter to give sharp blue flames with yellow tips.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 43 of 52 PageID #: 43

24.     Dale failed to assure floor clearance sufficient to minimize the chance of the blockage of the burner ports by ash accumulation.

25.     Dale failed to locate the log lighter such that the burner ports are facing inwards at 30-45 degrees, with the air shutter facing out towards the front.

26.     Dale positioned the burner pipe so that the flame holes were angled more downward to the flooring of the hearth, rather than facing more upward toward the grate, so that the flames emanating from the flame holes burned toward the flooring rather than burning upward to the grate.

27.     The flooring of the firebox hearth was made of metal, as this was a fireplace insert rather than a masonry fireplace, a condition which Dale could see or should have seen for itself when it performed the inspection and/or at the time of the installation of the burner pipe.

28.     Dale aimed the ignitor gas flame holes downward instead of upward and thus increased the heat level to the flooring under the firebox and thus increased the hazard of ignition of wood surrounding the fireplace insert.

29.     Dale failed to obtain, and/or review and/or follow the DESA instructions for the DESA brand fireplace insert on safety precautions for the insert if it is to be wood burning instead of gas burning.

30.     Dale failed to assure that there was insulation around the gas line and in the sleeve opening and failed to properly seal any gaps between gas line and refractory knockout hole with refractory cement or commercial furnace cement.

31.     Further, Dale also should have checked the seams around the firebox to see if they were properly sealed and should have then properly sealed those seams to protect against heat igniting the wood framing of the fireplace insert.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 44 of 52 PageID #: 44

32.     Dale also failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new burner pipe assembly.

33.     Additionally, Dale did not secure a permit for the work being performed or have an inspection performed by the proper agency to verify the quality and conformity of their work.

34.     On the night of the fire, Tom Vogel started a log fire in the subject fireplace at around 7:30 or 8:00 p.m.

35.     At around 9:30 p.m., Mr. Vogel was in his bedroom, which has a fireplace opposite from the veranda fireplace, when the flat screen TV above his bedroom fireplace suddenly turned off.

36.     The two fireplaces share a common area between them in which two separate chimney cases run upward to the roof.

37.     The subject fireplace, which is an outdoor fireplace, had been burning wood since 7:30 or 8:00 pm that night.

38.     When the bedroom TV turned off, Mr. Vogel walked toward the wall where the TV was mounted to investigate.

39.     At first, he thought the cable had gone out, but as he got closer he could see that the TV actually shut down.

40.     While close to the wall, he could hear what sounded like a crackling sound behind the bedroom fireplace wall.

41.     Mr. Vogel placed his hand on the wall and found it was warm to the touch.

42.     Mr. Vogel went through the door to the left of the bedroom fireplace to the veranda and checked the outdoor fireplace.

43.     He noticed that the fire in the outdoor fireplace was low.

44.     Mr. Vogel went back into his bedroom and could still hear crackling and feel warmth, at which point he told his wife to call 911 and they took their children out of the house.

45.     The fire spread rapidly through the house and, despite the best efforts of the responding fire department, the house was severely damaged.

46.     After the fire, a coordinated inspection of the subject home took place on November 23, 2011, attended by undersigned counsel, John Reis, and the following: (1) Tom Vogel, owner of Dale; (2) Tim Burgess, electrical engineer with Unified Investigations & Sciences, Inc., , retained by   Chubb; (3) Jesse Hooten, fire investigator with Unified Investigations & Sciences, retained by   Chubb; (4) David Wright, P.E., of Wright Fire & Forensics, retained by Chubb; (5) Jeff Morrill of Morrfire Investigations, representing Dale; (6) Joe Wheeler, attorney for Dale; (7) Tom Carlton, attorney for Dale; (8) Patrick Murphy, fireplace manager with Dale; (9) Jarred McNeal, National General Adjuster, Engel Martin & Associates, Inc., retained by Builders Insurance, insurer for Williamson County Heating (which had installed gas lights above the subject fireplace); (10) Herbert Allen Cole of Williamson County Heating; (11) McKenzie Roberts, P.E., Engineering Consultant, Engineering Consultants & Design, Inc., McMinnville, TN 37110, for Williamson; (13) James A. Waller, P.E., Structural Engineer, VCE, Inc., Nashville, TN 37202, for Williamson County Heating; (14) Charles A. Griffin of VCE, Inc., for Williamson County Heating; (15) Dewey N. Griffin of VCE, Investigative, Nashville, TN 37210 for Williamson County Heating; (16) Frank Thomas of Leitner Williams for Williamson County Heating; (17) Joe Holt of Kustom Home Entertainment (which had installed cabling for the TV in the Vogels' bedroom); and (18) Nancy L. Jones, Fire Marshal, Brentwood Fire & Rescue, Brentwood Fire Department, Brentwood, TN.

47. At the November 23, 2011 scene inspection, all parties present had an opportunity to interview Tom Vogel and they did so at length.

48. On December 2, 2011, a second coordinated scene inspection occurred, attended by undersigned counsel John Reis and Tim Burgess, Jesse Hooten, David Wright, Todd Niner of Wright Investigations, Jeff Morrill, Dewey Griffin, McKenzie Roberts, Charles Griffin, David Wright, Todd Niner, Karen Niner, Frank Thomas, and Nancy Jones.

49. At the December 2, 2011 scene inspection, the subject fireplace was removed and has been stored off site ever since, along with any other evidence from the scene that those in attendance desired be removed and retained.

50. On April 10, 2012, an off-site inspection took place whereby all evidence removed from the scene was carefully examined and subjected to such testing as the parties desired, attended by Jesse Hooten, David Wright, Karen Niner, Jeff Morrill, Dewey Griffin, McKenzie Roberts, and Frank Thomas.

51. The results of the above inspections and examinations revealed that the cause of the fire was ignition of wood in the framing of the subject fireplace, which had overheated due to the failures and omissions of Dale when they converted the fireplace from a gas log system to a wood burning system.

52. The fire destroyed the subject home and the subject vehicle.

53. As a result of the fire, the Vogels made a property insurance claim with Chubb for the damages to the house and its contents and the loss of use thereof.

54. As a result of the fire, Denise Vogel made a property insurance claim with Traveler for the damages to the subject vehicle and its loss of use.

55.     Chubb paid the Vogels claim for the damages to the house, contents, and loss of use of the home in the total amount of $4,956,965.36 and the Vogels incurred no deductible.

56.     Travelers paid Denise Vogel $42,331.31 and received back salvage value of $10,828.51, for a total claim of $31,502.49 for the damages to the subject vehicle in that amount; Denise Vogel incurred a $250.00 deductible.

57.     Having paid the Vogels for the above damages pursuant to the policy of insurance, Chubb is subrogated to its insureds' right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

58.     Having paid Denise Vogel for the above damages pursuant to the policy of insurance, Travelers is subrogated to its insured's right to bring this action against those responsible for the damages and proceeds with this action on the basis of the doctrine of conventional subrogation.

## COUNT I
## BREACH OF CONTRACT

59.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

60.     Dale and the Vogels exchanged offers until they entered into a valid and enforceable oral and/or implied-in-fact contract pursuant to which Dale would use it professional knowledge and skills to convert the subject fireplace from a gas log system to a wood burning system.

61.     Having contracted to perform the work described above, Defendant had an implicit duty to perform in accordance with applicable codes, procedures, and industry standards,

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 48 of 52 PageID #: 48

in a workmanlike manner, and/or in compliance with the terms of the contract and was fully

responsible for defective materials and/or workmanship it provided.

62.     Defendant breached that standard of care in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of
        the firebox meets the wood framing and where the burner pipe enters the firebox
        from the framed-in area --  were sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the
        flooring of the hearth, rather than facing upward toward the grate, so that the
        flames emanating from the flame holes burned directly against the flooring rather
        than burning upward to the grate.

c.      it failed to provide the Vogels with any instructions or warnings for future use of
        the fireplace, including the failure to caution or warn the Vogels regarding the
        size of the grate they should use in the firebox with the new gas burner pipe
        assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected
        and approved by local officials.

63.     The subject fire and resulting damages were a direct and proximate result of the

above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this

Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be

properly awarded by the Court.

## COUNT II
## NEGLIGENCE

64.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding

Count I as if fully stated herein.

65.     Dale after being given an opportunity to inspect undertook for an agreed fee to

convert the subject fireplace from a gas log system to a wood burning system for the use and

benefit of the Vogels.

66.     Having undertaken to perform the work described above, Defendant had an

implicit duty to perform said work in accordance with applicable codes, procedures, and industry

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 49 of 52 PageID #: 49

standards and in a workmanlike manner and was responsible for defective materials and/or workmanship it provided.

67.     Defendant breached that standard of care in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area --  were sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate.

c.      it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

68.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE

69.     Plaintiffs hereby incorporate and re-aver by reference the allegations preceding Count I as if fully stated herein.

70.     Dale represented itself as knowledgeable, experienced and capable of undertaking to inspect and evaluate the fireplace conversion project and thereafter undertook for a fee to convert the subject fireplace from a gas log system to a wood burning system for the use and benefit of the Vogels.

Case 3:13-cv-00528   Document 1   Filed 05/31/13   Page 50 of 52 PageID #: 50

71.     Having undertaken to perform the work described above, Dale impliedly warranted that it would perform in a workmanlike manner and exercise reasonable care in converting the fireplace system, such that the system would be free from defects and would be fit for its intended purposes and in accordance with local building codes, building plans and industry standards.

72.     The defendant breached this warranty by failing to convert the fireplace system in a workmanlike manner, free from defects, and in accordance with industry standards, local building codes and the building plans, in the following ways:

a.      it failed to assure that the seams around the firebox -- where the metal frame of the firebox meets the wood framing and where the burner pipe enters the firebox from the framed-in area -- were insulated and/or sealed with fireplace sealant.

b.      it positioned the burner pipe so that the flame holes faced downward to the flooring of the hearth, rather than facing upward toward the grate, so that the flames emanating from the flame holes burned directly against the flooring rather than burning upward to the grate, as specified by the instructions of the manufacturer.

c.      it failed to provide the Vogels with any instructions or warnings for future use of the fireplace, including the failure to caution or warn the Vogels regarding the size of the grate they should use in the firebox with the new gas burner pipe assembly.

d.      it failed to apply for a permit to perform the work and to have the work inspected and approved by local officials.

e.      it knew or should have known when it reported the project complete that the fireplace did not conform to standards, did not comply with codes, and was defective and unsafe to use.

73.     The subject fire and resulting damages were a direct and proximate result of the above alleged failures, errors, and omissions of Dale.

WHEREFORE, Plaintiffs respectfully request the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

Respectfully submitted this the 30th day of May 2013.

By:    /s/ John W. Reis
        John W. Reis, Esq., BPR # 024818
        COZEN O'CONNOR
        One Wells Fargo Center, Suite 2100
        301 South College Street
        Charlotte, NC 28202
        Phone:  (704) 376-3400
        Fax:  (704) 334-3351
        E-mail:  jreis@cozen.com
        *Counsel for Plaintiffs*

By:    /s/ James A. Freeman
        James A. Freeman, III, Esq., BPR # 003223
        JAMES A. FREEMAN & ASSOCIATES
        2804 Columbine Place
        Nashville, TN 37204
        Phone: 615-383-3787
        Fax: 615-463-8083
        Email: jfreeman@jafreemanlaw.com
        *Co-counsel for Plaintiffs*